# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

ANNA M. ANNESLEY,         )
                               )

           **Plaintiff,**      )
                               )

        **v.**                )         **Case No. CIV-14-236-SPS**
                               )

CAROLYN W. COLVIN,      )
**Acting Commissioner of the Social**  )
**Security Administration,**       )
                               )

         **Defendant.**     )

## OPINION AND ORDER

The claimant Anna M. Annesley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 12, 1965, and was forty-six years old at the time of the administrative hearing (Tr. 34, 128). She has a ninth grade education and has worked as a cashier checker, cook, and daycare worker (Tr. 34, 134, 207). She alleges that she has been disabled since June 15, 2004, due to a back injury, diabetes, high blood pressure, depression, anxiety, panic attacks, knee problems, and a learning disability (Tr. 118, 133).

## Procedural History

On January 26, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Trace Baldwin held an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 21, 2013 (Tr. 9-25). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). The ALJ found that the claimant could frequently balance, stoop, kneel, and crouch; could occasionally push/pull (including the operation of hand/foot controls), climb ramps, and crawl; and could never climb ladders, ropes, or scaffolding (Tr. 14). He

found she had no communicative, manipulative, visual, or environmental limitations (Tr. 14). Due to psychologically-based symptoms, he found the claimant could understand, remember, comprehend, and carry out simple tasks and instructions; could work with co-workers and supervisors on a superficial work basis; could not work with the general public; and could adapt to routine changes in the work setting (Tr. 14). ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, packing line worker, small parts assembler, re-pack worker (Tr. 24).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly analyze the medical source and other source evidence, and (ii) failing to consider the combined effects of her obesity when determining her RFC. The Court agrees that the ALJ did err in analyzing the medical source evidence and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, bilateral leg sciatica, chronic pain disorder, diabetes mellitus, major depressive disorder, and posttraumatic stress disorder, as well as the nonsevere impairments of obesity and subaverage general intellectual functioning (Tr. 12). As to her mental impairments, the claimant presented to Variety Care Family Health on October 12, 2009, with complaints of left shoulder pain, diarrhea, and nausea (Tr. 315-17). At that visit, the nurse practitioner assessed the claimant with diabetes mellitus type

II, anxiety state not otherwise specified, hypertension, tremor NEC, and shoulder bursitis/tendonitis (Tr. 316).

On December 28, 2010, shortly after the death of her husband and son, the claimant presented to TriCity Family Clinic (Tr. 327-29). She reported being very emotional; a decreased appetite; poor sleep; and back pain at L3, L4, and L5 which radiated into both legs (Tr. 327). Dr. Steve Schoen assessed the claimant with lumbar disc disease with bilateral leg sciatica, depression, generalized anxiety with sleep deprivation, and hypertension (Tr. 327). On February 22, 2011, the claimant reported that she was still slightly depressed and still had neck and back pain (Tr. 337). On May 20, 2011, the claimant presented to Dr. Schoen with reports of swelling, tingling, and numbness in her feet; nighttime leg cramps; and continued depression and anxiety (Tr. 482).

Dr. Keith Green conducted a mental status examination of the claimant and completed an MSS on October 6, 2012 (Tr. 502-506). He administered the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III) and the claimant scored a full scale IQ of 74, placing her within the borderline range of intellectual functioning (Tr. 504). Dr. Green found that the claimant had adequate judgment in ordinary social and work-like settings and intact concentration and numerical reasoning, but impaired attention and pace, abstract reasoning, and instructional sequencing ability; thus, he concluded the claimant would need more than the usual amount of supervision in a work situation (Tr. 503, 505). Dr. Green opined that the claimant was moderately limited in her ability to understand, remember, and carry out simple instructions and to make judgments on

simple work-related decisions and markedly limited in her ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions (Tr. 507). He indicated the claimant's severity of impairment of functional psychological capacity for work was moderate to marked (Tr. 505).

In his written opinion, the ALJ discussed the claimant's hearing testimony and function report, mentioned the third party reports, and summarized the medical evidence. As to Dr. Green's opinion, the ALJ summarized his findings, but failed to provide any analysis or assign any weight with regard to his assessment; the ALJ adopted some, but not all, of his findings without explanation (Tr. 20-21).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350

F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ did not assign Dr. Green's opinion any weight, but appeared to adopt Dr. Green's findings regarding the claimant's ability to retain and carry out simple and some detailed instructions, to relate to others on a superficial basis, and her judgment in an ordinary work-like setting. He nevertheless failed to acknowledge Dr. Green's finding that the claimant needed more than the usual amount of supervision in a work situation and that her psychological impairments would moderately or markedly impact her capacity to work (Tr. 503). This was important because the claimant's ability to function under supervision and her capacity for work are important factors in assessing an RFC. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings, and in addition to evaluating Dr. Green's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ thus should have explained why he found certain aspects of Dr. Green's findings persuasive but not others. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). *See also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an

uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others."). The Commissioner argues that the ALJ properly rejected Dr. Green's opinion because his consultative exam occurred almost three years after the claimant's date last insured; however, this amounts to an improper post-hoc argument, as the ALJ made no attempt to disregard Dr. Green's opinion on this basis. *See Haga,* 482 F.3d at 1207–08 (10th Cir.2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Because the ALJ failed to analyze probative evidence potentially inconsistent with his RFC determination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2015.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**